**THIRD DIVISION**
**DOYLE, P. J.,**
**HODGES and WATKINS, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

**October 30, 2024**

# In the Court of Appeals of Georgia

A24A0825, A24A0865. LINCOLN COUNTY v. SERENITY BUILDERS AND DEVELOPMENT, LLC et al.; and vice versa.

DOYLE, Presiding Judge.

Serenity Builders and Development, LLC ("Serenity Builders") and Mark E. Jackson (collectively "the Plaintiffs") filed a statutory interpleader contesting certain sums owed to Lincoln County under its water availability assessment that they contend are an illegal tax. The trial court determined on summary judgment that the county imposed an illegal tax, but ordered the Plaintiffs to continue paying it. The parties both appeal, and for the reasons that follow, we affirm the trial court's judgment in Case No. A24A0825 and affirm in part and vacate in part the judgment

in Case No. A24A0865.[1]

OCGA § 9-11-56 (c) provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law[.]" "A de novo standard of review applies to an appeal from a grant of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant."[2]

So viewed, the record reflects that Serenity Pointe Subdivision ("Serenity Pointe") is located in Lincoln County. The subdivision plat was approved and recorded in 2007. Recorded contemporaneously with the plat were a subdivision improvement agreement between Lincoln County and the developer and a declaration of covenants of Serenity Pointe. Because the subdivision initially lacked roads and utilities, the subdivision improvement agreement provided for approval and recordation of the plat upon the posting of security to ensure the completion of such

---

[1] We have consolidated the appeals because both cases are based on the same record and trial court proceedings.

[2] (Citations and punctuation omitted.) *Harco Nat. Ins. Co. v. Eric Knowles, Inc.*, 371 Ga. App. 295, 295-296 (899 SE2d 435) (2024).

infrastructure. The developer eventually completed these improvements, and Lincoln County accepted the water system.

Lincoln County had the developer stub water lines from the mainline to each of the lots, where water meter boxes were installed. Subject to a connection charge, water was available to each lot by request, whereupon Lincoln County would install a water meter and connect the mainline to the owner's line.

In 2007, Lincoln County enacted the following ordinance:

Section 70-126. Water Availability or "Stand By" Service Charge.

(a) There is hereby levied and assessed rates, fees and/or charges for the service, maintenance, and operation of the county water system, based upon the minimum water rate per month by each customer for whom water service is available from the county. See the definition of "water availability" as set forth in subsection (c) of this section. The charges for having service available shall be as shown in the rate schedule at the offices of the Board of Commissioners or other designated location.

(b) All property owners for whom there is "water availability" as set forth in subsection (c) shall either connect to the county water system as required by Lincoln County Code Section 70-51 or pay the charges in lieu thereof, as set forth in the rate schedule available to the public at the offices of the Board of Commissioners or other designated location. The purpose of the water system fees required under this section is for the County to recover an equitable and fair portion of the costs of

constructing water systems and/or providing water treatment plant capacity for potential customers in various service areas where the customers may or may not desire to connect to the water system. The expense of making water service available to a prospective customer should be borne by the person who benefits from the water availability, whether or not that person elects to avail himself of the services provide [sic] by the county at the county's expense.

(c) Water shall be considered available to any property where a water service connection is installed, and the water line and/or system has been approved by the County Engineer.

(d) The Board of Commissioners shall set rates for the use of the county water from time to time by resolution.

Between 2016 and 2018, Jackson and his company, Serenity Builders, acquired 20 undeveloped lots in Serenity Pointe. When acquired, none of the lots had water meters or water service connections. After Jackson acquired the lots, Lincoln County began invoicing him for water availability at a monthly rate of $10 per lot. Jackson paid the invoices for several months before discontinuing the payments. Lincoln County filed liens against the lots based on the unpaid water availability assessments.

By December 2018, Jackson had conveyed all of his lots at Serenity Pointe to Serenity Builders except one, on which he would later build his personal residence. When he applied for a construction loan to build his residence, a title search revealed

the outstanding liens, and his loan application was denied. Jackson retained an attorney who wrote a special insurance policy to cover the liens, collected the outstanding amounts, and interpleaded the funds into the trial court registry, permitting the construction of Jackson's residence to go forward.

When Jackson applied for water service to his residence during its construction, Lincoln County denied his application.[3] Lincoln County informed Jackson that water would not be supplied to his residence unless he paid Lincoln County the outstanding water availability assessments for all the undeveloped lots that the Plaintiffs owned. The Plaintiffs paid Lincoln County the outstanding balances, and Lincoln County connected Jackson's residence to the water system. Lincoln County advised Jackson that, going forward, if the Plaintiffs failed to pay the water availability assessments on any of their undeveloped lots, Lincoln County would shut off the water to his residence.

Since then, the Plaintiffs have acquired additional lots at Serenity Pointe. Jackson now owns two lots in the subdivision, including his personal residence, and Serenity Builders owns twenty-three lots. Because Jackson pays for water service at his residence, the water availability assessment no longer applies to that lot.

_____

[3] The County also denied Jackson's appeal from the denial of this application.

Nevertheless, the water availability assessment continues to apply to the other twenty-four vacant lots, and the Plaintiffs have paid all the assessments to date.

The parties filed cross-motions for summary judgment on several issues in the underlying interpleader action. Relevant to the instant appeals, the trial court denied as premature Lincoln County's motion for summary judgment as to the legality of the water availability assessment as applied to the Plaintiffs and denied Lincoln County's motion for summary judgment as to its entitlement to the interpleaded funds, finding that they were duplicative of the amounts paid directly to Lincoln County by the Plaintiffs. Based on this finding, the trial court granted the Plaintiffs' motion for summary judgment as to their entitlement to the interpleaded funds and ordered these funds to be disbursed to the Plaintiffs. Lincoln County appealed from the summary judgment order, and this Court affirmed pursuant to Court of Appeals Rule 36.[4]

On remittitur, the trial court notified the parties that it would convene a status conference at which it would address certain legal issues left open by the previous summary judgment order. . Notably, at the status conference, Lincoln County conceded that if the water availability assessment is a tax, it is illegal, but maintained that the assessment was a valid fee.

---

[4] See *Lincoln County v. Serenity Builders & Devs., LLC*, Case No. A21A1494 (decided Jan. 26, 2022).

On December 5, 2023, the trial court entered a second summary judgment order, holding that the water availability assessment is a tax because it is a means for the county to raise general revenue for the water system based on the payer's ownership of property, it is mandatory, it is not related to the payor's contribution to any burden on the county, and the payer receives no special benefit different from those to whom the charge does not apply. The trial court further held that the water availability assessment is an illegal tax because there is no general law authorizing it, and it is neither uniform nor ad valorem.[5] Consistent with these holdings, the trial court held that Lincoln County lacked authority to claim and file liens on the Plaintiffs' lots under the auspices of the water availability assessment, and the liens were void ab initio. The trial court held that the Plaintiffs were entitled to a refund of all of their water availability assessment payments, plus prejudgment interest.[6] Finally, the trial court held that Lincoln County was not a party or third-party beneficiary to the Serenity Pointe covenants and had no rights under either the covenants or subdivision plat to enforce the water availability assessment.

---

[5] See Ga. Const. of 1983, Art. VII, Sec. I, Par. III.

[6] See OCGA § 48-5-380 (a) ("[E]ach county . . . shall refund to taxpayers any and all taxes and license fees . . . [w]hich are determined to have been erroneously or illegally assessed and collected from the taxpayers . . . or . . . [w]hich are determined to have been voluntarily or involuntarily overpaid by the taxpayers.").

7

On December 11, 2023, the trial court amended the second summary judgment order to include a temporary provision requiring the Plaintiffs to pay all water availability assessments on their unimproved lots at Serenity Pointe when due by depositing these funds into the trial court registry. The trial court also amended the order to include a temporary injunction preventing Lincoln County from terminating water service to Jackson's residence if he or Serenity Builders failed to pay any water availability assessments on their unimproved lots.

Lincoln County appeals from the December 5, 2023 summary judgment order in Case No. A24A0825, and the Plaintiffs cross-appeal from the December 11, 2023 summary judgment order in Case No. A24A0865.

*Case No. A24A0825*

1. Lincoln County first contends that the trial court erred by holding that the water availability fee is a tax. We disagree.

"The distinction between a tax and a fee is not one of names but of substance."[7] The Supreme Court of Georgia has defined the difference between a tax and a fee as follows:

---

[7] (Punctuation omitted.) *McLeod v. Columbia County*, 278 Ga. 242, 244 (2) (599 SE2d 152) (2004), citing *Richmond County Bus. Assn. v. Richmond County*, 224 Ga 854, 856 (1) (165 SE2d 293) (1968).

A tax is an enforced contribution exacted pursuant to legislative authority for the purpose of raising revenue to be used for public or governmental purposes, and not as payment for special privilege or a service rendered. . . . Generally, we have considered four criteria in considering whether a charge is a tax, which we have defined as: (1) a means for the government to raise general revenue based on the payer's ability to pay (i.e., income or ownership of property), without regard to direct benefits that may inure to the payer or to the property taxed; (2) mandatory; (3) not related to the payer's contribution to the burden on government; and (4) not resulting in a special benefit to the payer different from those to whom the charge does not apply. In contrast, fees are a charge for a particular service provided, based on the payer's contribution to the problem.[8]

Lincoln County's water availability assessment has all of the features of a tax and none of the features of a fee. First, by the explicit terms of the ordinance, the purpose of the assessment is to recover the general costs of maintaining Lincoln County's water infrastructure. It is based on property ownership. And it is imposed regardless of the fact that no direct benefit (i.e., water) inures to the persons and properties against which it is assessed.

Second, it is mandatory. Whether property owners "can reduce the amount of

---

[8] (Citations and punctuation omitted.) *Bellsouth Telecommunications, LLC v. Cobb County*, 305 Ga. 144, 146-147 (1) (824 SE2d 233) (2019), quoting *McLeod*, 278 Ga. at 244 (2) ("A charge is generally not a tax if its object and purpose is to provide compensation for services rendered.").

the charge" is relevant to whether it is mandatory.[9] ThePlaintiffs have no ability to reduce the amount of the water availability assessment.[10] Moreover, "the imposition of a lien directly against the property of those who fail to pay the utility charge" confirms the mandatory nature of the assessment.[11]

Third, the assessment is imposed regardless of the burden, if any, that owners of undeveloped lots without water service connections place on Lincoln County. The assessment remains the same regardless of a lot's size and distance from the water treatment facility. Thus, two different lots with vastly disproportionate water infrastructure requirements are each subject to the same $10 monthly assessment.

Fourth, paying the assessment results in no special benefit to the payer different from those to whom the charge does not apply. Those who pay the water availability assessment receive no water from Lincoln County. Likewise, those to whom the water availability assessment does not apply receive no water from Lincoln County.

Lincoln County argues that the availability of water service provides a special

---

[9] *McLeod*, 278 Ga. at 245 (2).

[10] Although they can *avoid* the water availability assessment by connecting to Lincoln County's water system, they cannot *reduce* the amount of the charge on their undeveloped lots.

[11] Id.

benefit to those who pay the water availability assessment. *Monticello, Ltd. v. City of Atlanta*[12] forecloses this argument. In *Monticello*, the Atlanta City Charter authorized an assessment for the collection and removal of garbage from occupied premises.[13] The city imposed this assessment against unoccupied and uninhabitable premises as well.[14] This Court held that the latter assessment violated the city charter.[15] In reaching this result, this Court recognized that, generally, the government cannot impose an assessment "for services that have not been provided[, and that a]n assessment levied in excess of the benefit provided arbitrarily deprives a person of his property."[16] In that context, this Court observed:

> The city contends that [an owner of unoccupied premises] receives a benefit from the *mere availability* of solid waste disposal service. The city argues that the continued availability of immediate refuse collection service is an advantage provided to [such an owner] by the city that warrants a continued assessment . . . against the presently uninhabitable apartments, because of the possibility that these apartments might be

---

[12] 231 Ga. App. 382 (499 SE2d 157) (1998) (Beasley, J. concurring fully in Division 1 and in the judgment).

[13] See id. at 383 (1).

[14] See id. at 382 (1).

[15] See id. at 387 (1).

[16] Id. at 386 (1).

renovated and occupied at some time in the future. . . .

> [T]he collection, removal, and disposal of solid waste are services . . . and must provide a *recognizable benefit* to the payer of the [assessment] for such services. The city cannot impose a[n assessment] without a corresponding benefit by asserting that the mere existence of a collection service provides to all its citizens *an inchoate opportunity to take advantage of the service at some future date.*[17]

The water availability assessment here provides the same recognizable benefit to undeveloped lot owners as the garbage disposal availability assessment provided to the owners of unoccupied premises in *Monticello* — none.

Lincoln County argues that, for those who pay the water availability assessment, the cost to connect to water service is $50, whereas the cost to connect to water service for those to whom the water availability assessment does not apply is $1,250, and this price difference constitutes a recognizable benefit. The after-the-fact price difference is not a service previously rendered or provided for which the assessment is compensation; it is a collateral discount that Lincoln County chooses to offer.[18] Based on the foregoing, the trial court correctly concluded that Lincoln County's

---

[17] (Citations and punctuation omitted; emphasis added.) Id. at 386-387 (1).

[18] Even assuming that the discount is a service provided, it is not based on the payer's contribution to any particular problem. See *Bellsouth*, 305 Ga. at 147 (1).

water availability assessment is a tax and not a fee.

Moreover, the trial court properly determined that the assessment is an illegal tax. The record reflects that there is no general law authorizing it.[19] It is not uniform, as it applies to some, but not all, property owners.[20] And it is not ad valorem[21] because it is imposed on a per-lot basis. Finally, counsel for Lincoln County conceded that if the water availability assessment is a tax, it is illegal:

> COURT: Because in any event if it is a tax, it's illegal. . . . Do you agree with that, Mr. Long? . . . If it's a tax it's illegal?
> COUNSEL: If it's a tax I would agree it would be illegal.

This is a conclusive judicial admission.[22] Accordingly, the trial court correctly held that the Plaintiffs are entitled to a refund for all of their water availability payments, which were illegally assessed and collected pursuant to Lincoln County's water

---

[19] See Ga. Const. of 1983, Art. VII, Sec. I, Par. III ("All taxes shall be levied and collected under general laws and for public purposes only.").

[20] See id. ("[A]ll taxation shall be uniform upon the same class of subjects within the territorial limits of the authority levying the tax.").

[21] See id. See also Ga. Const. of 1983, Art VII, Sec. II, Par. I ("Except as authorized in or pursuant to this Constitution, all laws exempting property from ad valorem taxation are void.").

[22] See *Rhone v. Bolden*, 270 Ga. App. 712, 715 (2) (608 SE2d 22) (2004) ("An admission in open court is an admission in judicio; a judicial admission is conclusive.") (citation and punctuation omitted).

availability assessment ordinance.[23]

2. Lincoln County next contends that the trial court erred by holding that the liens it filed against Jackson's property based on the water availability assessment were void. This enumeration is without merit.

Based on our holding in Division 1 that Lincoln County's water availability assessment is an illegal tax, it necessarily follows that the liens Lincoln County filed against Jackson's lots pursuant to this assessment are void. Lincoln County filed these liens purportedly under its tax power, and not pursuant to a specific county tax ordinance. A tax lien filed pursuant to an illegal tax is void.[24]

Additionally, OCGA § 44-14-320 (a) provides an exhaustive list of liens that are established in Georgia, and water availability liens are not included on this list. OCGA § 44-14-320 (b) (1) provides that "[a]ll other liens [not provided for in this chapter] shall be defined as nonconforming liens and shall not be eligible for filing and recording." Further, "[e]ach nonconforming lien shall be a nullity with no force or effect whatsoever, even if said nonconforming lien is filed, recorded, and indexed in

---

[23] See OCGA § 48-5-380 (a) (1).

[24] See *Dobson v. Brown*, 225 Ga. 73, 75 (2) (a) (166 SE2d 22) (1969) (holding that if a taxation statute was unconstitutional and void, official actions taken in enforcement of that statute were also void).

the land records of one or more counties in this state."[25] Lincoln County's water availability liens are thus nonconforming liens under OCGA § 44-14-320 (b) (2), despite the fact that they were filed and recorded.

To the extent that Lincoln County argues that its liens were valid under OCGA § 36-60-17, the record reflects that, before Lincoln County filed its water availability liens against Jackson, he had not applied for water service, and had never been supplied with water to any of his lots. Thus, under OCGA § 36-60-17 (d), Lincoln County was not authorized to impose liens against Jackson's lots to secure unpaid charges for water furnished, because water was never furnished — it was merely available. Because Lincoln County's water availability liens are nonconforming liens under OCGA § 44-14-320 (b) (2) and are not water liens under OCGA § 36-60-17, the trial court did not err by declaring the liens void.

3. Lincoln County contends that it has enforceable interests in the covenants and subdivision plat of Serenity Pointe that allow it to impose the water availability assessment and liens and that the trial court therefore erred by holding otherwise. We disagree.

Lincoln County is not a party to the covenants. Nor are the covenants

---

[25] OCGA § 44-14-320 (b) (2).

mentioned in the subdivision improvement agreement between Lincoln County and the developer. What this agreement does contain, however, is a merger clause stating that the agreement "contains the entire agreement between the parties with respect to the subject matter . . . and supersedes all prior agreements and understandings . . . between the parties."

Lincoln County asserts that it was assigned "certain rights" of the declarant under the covenants when it accepted the developer's water lines, but does not articulate the specific purported rights. Lincoln County also asserts that it has rights under the covenants as an assignee of the developer, but again fails to specify exactly what rights the developer purportedly assigned.

Lincoln County also contends that it is a third-party beneficiary of the covenants and subdivision plat based on its acceptance of the developer's water lines. This contention is unfounded. The covenants contain the following provision:

> *Rights of Third Parties.* This Declaration shall be recorded for the benefit of Declarant, the Owners, and their mortgagees as herein provided, and by such recording, no adjoining property owner or third party shall have any right, title or interest whatsoever in the Subdivision, except as provided herein, or in the operation or continuation thereof or in the enforcement of any provisions hereof, and, subject to the rights of Declarant and mortgagees as herein provided, the Owners shall have the right to extend, modify, amend, or otherwise change the provisions of

this Declaration without the consent, permission, or approval of any adjoining owner or third party.

"In order for a third party to have standing to enforce a contract[,] it must clearly appear from the contract that it was intended for his benefit. The mere fact that he would benefit from performance of the agreement is not alone sufficient."[26] Given the explicit language in the covenants that no third party has any interest in the subdivision, its operation, or enforcement provisions of the covenants, "the intent of the parties that no others benefit from the [covenants] could scarcely have been more clearly and unambiguously expressed."[27] Thus, the trial court correctly held that Lincoln County could not enforce rights under the covenants as either a party or third-party beneficiary.[28]

Lincoln County has no enforceable interest in the subdivision plat, either. Pretermitting whether Lincoln County has abandoned this part of its enumeration of

---

[26] (Citation and punctuation omitted.) *Scott v. Mamari Corp.*, 242 Ga. App. 455, 457 (1) (530 SE2d 208) (2000), citing OCGA § 9-2-20 (b).

[27] (Citation omitted.) *Kaesemeyer v. Angiogenix, Inc.*, 278 Ga. App. 434, 437 (1) (629 SE2d 22) (2006).

[28] See id. at 438 (1).

error,[29] the subdivision plat confers no such rights to Lincoln County. Although the plat contains a note that all lots in the subdivision will be served by the county water system, this is a statement of fact and not an enforceable provision. Accordingly, the trial court correctly held that Lincoln County acquired no enforcement rights from the plat.

4. Finally, Lincoln County contends that the trial court erred by conducting its own investigation into Lincoln County's water availability assessment ordinance and disallowing Lincoln County to respond to such investigation. This enumeration is without merit.

Here, the parties previously filed motions for summary judgment,[30] and in the

---

[29] Lincoln County's brief states that it has an interest in enforcing the terms and provisions of the plat, but fails to cite any authority in support of the proposition that the plat confers such enforcement rights and fails to articulate any argument as to why the plat confers such rights. See Court of Appeals Rule 25 (d) (1) ("Any enumeration of error that is not supported in the brief by citation of authority or argument may be deemed abandoned.").

[30] *Cofield v. Halpern Enterprises*, 316 Ga. App. 582, 583 (730 SE2d 63) (2012) ("A motion for summary judgment is a vehicle for disposing of a controversy without the necessity of a trial. It is, as the description shows, a summary disposition of the issues in order to efficiently resolve litigation. Nevertheless, due process requires that the respondent not be surprised; rather, that he be given reasonable opportunity to refute the movant's showing that there are no genuine issues of material fact. It is error to grant a motion for summary judgment without giving notice or the opportunity to be heard.") (citations and punctuation omitted).

Notice of Status Conference the trial court provided notice of the issues that would be considered at the hearing.[31] The transcript of the hearing reflects that the trial court hewed closely to these issues. Additionally, although the notice indicated that additional briefing prior to the hearing was not requested or required, the court did not specifically prohibit such briefing, and Lincoln County elected not file any such supplemental briefing, either before or after the hearing. The trial court also gave Lincoln County ample opportunity to supplement the record, and Lincoln County availed itself of this opportunity by supplementing the record with several pages of certified documents before the trial court entered its order. Accordingly, this enumeration provides no basis for reversal.

*Case No. A24A0865*

2. The Plaintiffs contend that the trial court erred by holding that there were no genuine issues of material fact as to whether water was available to them under Lincoln County's water availability assessment ordinance. As the Plaintiffs concede,

---

[31] Compare *Headrick v. Stonepark of Dunwoody Unit Owners Assn.*, 331 Ga. App. 772, 777-778 (3) (771 SE2d 382) (2015) (holding that the trial court erred by granting summary judgment on an issue for which the parties did not seek summary judgment and for which the trial court did not provide notice and an opportunity to be heard); *Bennett v. McDonald*, 238 Ga. App. 414, 415 (1) (518 SE2d 912) (1999) (reversing grant of summary judgment without holding a hearing that had been timely requested by a party).

based on our holding in Case No. A24A0825, this enumeration of error is moot.[32]

2. The Plaintiffs next contend that the trial court erred by ordering them to continue paying what it had determined was an illegal tax. The grant of a temporary injunction is reviewed for a manifest abuse of discretion.[33] Although we disagree with this characterization of the trial court's actions, our holding in Case No. A24A0825 that Lincoln County's water availability assessment constitutes an illegal tax requires us to vacate this portion of the trial court's amended second summary judgment order, entered on December 11, 2023. In particular, the following portion of the trial court's order is vacated:

Temporary Payment of Availability Fees

Until further order of the court, Plaintiffs are ORDERED to timely pay all water availability fees on their unimproved lots in Serenity Pointe Subdivision assessed by Lincoln County as the same become due by depositing same into the registry of the court.

*Judgment affirmed in Case No. A24A0825. Judgment affirmed in part and vacated in part in Case No. A24A0865. Hodges and Watkins, JJ., concur.*

---

[32] See *Giacomantonio v. Romagnoli*, 306 Ga. App. 26, 31 (1) (701 SE2d 510) (2010) (affirming the judgment of the trial court and holding that an issue raised in the appeal did not need to be reached because the affirmance rendered that issue moot).

[33] See id. at 26.